0ROBERT E. MAYERS,                          )
                                            )
      Plaintiff/Appellant,              )        Appeal No.
                                            )        01-A-01-9802-CV-00101
v.                                          )
                                            )        Davidson Circuit
                                            )        No. 97C-1914
MILLER MEDICAL GROUP,                       )
MILLER MEDICAL GROUP,                       )
An Affiliate of Baptist Healthcare          )
Group; RUSSELL D. WARD, M.D. )
and MICHEL KUZUR, M.D.,                      )
                                            )
      Defendants/Appellees.             )
                                            )

FILED

December 8, 1998

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE

THE HONORABLE MARIETTA M. SHIPLEY, JUDGE

ROBERT E. MAYERS, Pro Se
1525 Naples Avenue
Nashville, Tennessee  37207

ROBERT E. PARKER
RICHARD F. RUSSELL
200 Fourth Avenue North, 5th Floor
Nashville, Tennessee  37219
      ATTORNEYS FOR DEFENDANTS/APPELLEES

AFFIRMED AND REMANDED

WILLIAM B. CAIN, JUDGE

# OPINION

Plaintiff, Robert E. Mayers, acting pro se in this medical malpractice action, appeals the decision of the Circuit Court of Davidson County denying his application for relief under Tennessee Rules of Civil Procedure 60.02 from a final summary judgment rendered in favor of the defendants.

On June 16, 1997, Robert E. Mayers filed suit against Miller Medical Group and Drs. Russell D. Ward and Michel Kuzur, former physician members of Miller Medical Group. In the complaint it is alleged that on July 28, 1980, while plaintiff was employed by the Tennessee Department of Corrections at Spencer Youth Center, he sustained a work related injury to his mid and upper chest when kicked by a juvenile inmate.

He was first treated at Miller Medical Group on June 18, 1981, by Dr. Russell D. Ward, presenting with a complaint of constant pain in his chest. Dr. Ward prescribed medications for him in 1981 and then retired from the practice of medicine in 1982. Plaintiff was then treated by the defendant, Michael E. Kuzur, from 1983 until his last treatment by Dr. Kuzur on April 25, 1989. During the course of his treatment, Dr. Kuzur prescribed Naprosyn, 375 milligrams, with the prescription issued in 1989 and continually renewed until a last prescription therefor on February 19, 1991.

Following the last treatment by any of the defendants in February of 1991, Mr. Mayers, on December 18, 1991, was first treated by Dr. Winston Griner at the Vanderbilt Pain Clinic, still suffering from pain in his chest which had continued since his original injury in 1980.

On June 18, 1996, plaintiff was first seen by Dr. Richard N. Pearson, III, who diagnosed his problem as chronic sternal nonunion requiring surgery. In his report to the pain control center of June 18, 1996, Dr. Pearson stated in part:

> . . . As you well know, he is a 44 year old gentleman who
> incurred a fractured sterno manubrial junction in

approximately 1980, when kicked in the chest by an inmate during his work as a corrections officer. Although he was able to manage this discomfort with high doses of non-steroidal anti-inflammatories, a combination of bleeding hemorrhoids and persistent anemia due to GI blood loss necessitated discontinuation of these medications. Since that time, approximately 3 years ago, he has been managed by repeat alcohol injections in the peristernal area, which have been effective for up to 2 months at a time. He remains employed as a counselor at the Department of Corrections, and is no longer involved in active physical activity.

On physical examination, Mr. Mayers has clear evidence of a step-off at a sterno manubrial junction. A sternal click is readily palpable at this point. It is my clinical impresion, which is supported by his bone scan data, that he has chronic inflammation around the pseudo capsule associated with his unhealed chronic sterno manubrial dislocation.

Mr. Mayers seems like a responsible individual who is truly plagued by chronic pain related to a specific physical disorder which I believe can be corrected at relative low risk.

Dr. Pearson performed the surgery on July 17, 1996, with apparently satisfactory results.

The defendants filed a joint answer denying all allegations of negligence and all allegations of fraudulent concealment. Coupled with the answer, Dr. Kuzur filed his affidavit asserting familiarity with the acceptable standard of medical practice in Nashville and further asserting his compliance with the standard of care. As affirmative defenses, all defendants pleaded the one year statute of limitations provided by Tennessee Code Annotated section 29-26-116(a)(1) and the three year statute of repose provided by Tennessee Code Annotated section 29-26-116(3).

On August 25, 1997, all defendants filed a motion for judgment on the pleadings or summary judgment pursuant to Rules 12 and 56 of the Tennessee Rules of Civil Procedure, together with a statement of material facts pursuant to Rule 56.03.

On September 23, 1997, plaintiff filed pro se a motion for an extension of time to answer which was granted and the Rule 12 and Rule 56 motions reset for November 7, 1997.

On October 16, 1997, plaintiff responded to the Rule 12 and Rule 56 motion including in his response a copy of the letter from Dr. Pearson of June 18, 1996.

The Rule 12 and Rule 56 motions were heard on November 7, 1997, and by order dated November 13, 1997, the trial court held that the summary judgment motion of the defendatns was well taken in all respects and was granted.

No appeal was taken from this judgment within thirty days after November 13, 1997, and it thus became final.

On January 9, 1998, the plaintiff filed pro se his motion for relief from the November 13, 1997 judgment pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure. This motion was accompanied by an affidavit of Dr. Pearson stating, in pertinent part:

> 2.     Based on my examination, it is my medical judgment that Robert Mayers suffered from chronic sternal nonunion requiring surgery.
> 3.     I believe if a medical diagnosis of chronic sternal nonunion had been rendered earlier, Robert Mayers medical condition could have been resolved more quickly.

The Rule 60.02 motion of the plaintiff was heard on February 13, 1998 and denied by the trial court by an order entered on February 17, 1998.

Plaintiff pro se appealed the February 13, 1998 order by filing notice of appeal on February 19, 1998.

I.      THE RULE 60.02 MOTION

This appeal is not from the grant of summary judgment of November

13, 1997. This judgment had become final thirty days thereafter and the Rule 60.02 motion for relief therefrom was not filed until January 9, 1998.

The only grounds for relief set forth in the Rule 60.02 motion is the assertion by the plaintiff that the affidavit of Dr. Pearson is newly discovered evidence. Clearly it is not. When Mr. Mayers attempted to use the June 18, 1996 letter from Dr. Pearson at the November 9, 1997 hearing on the defendants' Rule 12 and Rule 56 motion, the trial court correctly pointed out, according to appellant, that same was not in affidavit form and could not be considered in determining the Rule 56 motion. Mr. Mayers did not present Dr. Pearson's affidavit until well after appeal time had expired on the November 13 grant of summary judgment. Even if the affidavit of Dr. Pearson might be characterized as newly discovered evidence, no relief is available under Rule 60.02 since the evidence could clearly have been discovered prior to the summary judgment hearing by the exercise of reasonable diligence. *Spence v. AllState Ins. Co.*, 883 S.W.2d 586, 596 (Tenn. 1994).

The supreme court has held:

To set aside a judgment under rule 60.02 the burden is upon the movant to prove that he is entitled to relief, and there must be proof of the basis on which relief is sought. *Brumlow v. Brumlow,* 729 S.W.2d 103, 106 (Tenn.Ct.App.1986); *Jefferson v. Pneumo Services Corp.,* 699 S.W.2d 181, 186 (Tenn.Ct.App.1985). A motion for relief from a judgment pursuant to Rule 60.02 addresses the sound discretion of the trial judge; the scope of review on appeal is limited to whether the trial judge abused his discretion. *Toney v. Mueller Co.*, 810 S.W.2d 145 (Tenn.1991); *Travis v. City of Murfreesboro*, 686 S.W.2d 68, 70 (Tenn.1985).

Rule 60.02 "was designed to strike a proper balance between the competing principles of finality and justice." *Jenkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn.1976). With regard to the purpose of the rule, this Court recently stated,

"Rule 60.02 acts as an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." *Thompson v. Fireman's Fund Ins. Co.*, 798 S.W.2d 235, 238

> (Tenn.1990). Because of the importance of this "principle of finality," the "escape valve" should not be easily opened.
> *Toney v. Mueller Co.*, 810 S.W.2d at 146.

**Banks v. Dement Constr. Co., Inc.**, 817 S.W.2d 16, 18 (Tenn. 1991).

The action of the trial court in overruling the Rule 60.02 motion filed by Mr. Mayers was clearly not an abuse of the discretion vested in the trial court and is therefore affirmed.

II.      THE SUMMARY JUDGMENT

Although the affirmation of the Rule 60.02 denial by the trial court is determinative of this appeal, it is equally clear that the action of the trial judge in granting summary judgment to the defendants was a correct action.

First, the plaintiff must prove malpractice by expert testimony under Tennessee Code Annotated section 29-26-115. Such expert testimony must establish:

> (1)   The recognized standard of acceptable professional practice in the profession and the speciality thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;
>
> (2)   That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; . . .

Tenn. Code Ann. § 29-26-115(a)(1)(2).

The affidavit tendered by Dr. Pearson in no way meets the standards required by the statute.

The record before the court is likewise devoid of any proof that any of the defendants ever knew that plaintiff suffered from "chronic sternal nonunion".

The supreme court has held:

> [5,6]  In order to meet the burden, a plaintiff who seeks to toll a statute of limitations on the ground of fraudulent concealment must prove that the cause of action was known to and fraudulently concealed by the defendant.  *Ray v. Scheibert*, 224 Tenn. (2 Pack) 99, 104, 450, S.W.2d 578, 580 (1969).  Knowledge on the part of the physician of the facts giving rise to a cause of action is an essential element of fraudulent concealment. *Ray v. Scheibert*, 484 S.W.2d 63, 72 (Tenn.App.1972).

***Benton v. Snyder***, 825 S.W.2d 409, 414 (Tenn. 1992).

Thus, even if the defendants failed to diagnose the condition of the plaintiff and such failure to diagnose the true condition fell below the applicable standard of care, it could not also consititute fraudulent concealment.  Under the standards set forth in ***Benton v. Snyder***, and ***Ray v. Scheibert***, how can one fraudulently conceal that which one does not know?

Thus, in this case regardless of the discovery rule question under the one year statute of limitations, the action is barred by the three year statute of repose (T.C.A. § 29-26-116(a)(3)) and the trial court was correct in granting the motion for summary judgment.

The judgment of the trial court is affirmed and costs of the appeal assessed against the appellant.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
WILLIAM C. KOCH, JR., JUDGE

_____
JERRY L. SMITH, SPECIAL JUDGE